**Lillie BENALLY and Grant Benally, on Behalf of Norman Benally, an adult, Plaintiffs,**

**v.**

**HUNDRED ARROWS PRESS, INC., Mediatex Communication Corporation, Art Magazine Publishers, Inc., Communication Specialists, Inc., and Amon Carter Museum of Western Art, Defendants.**

**Civ. No. 84–0313–JB.**

United States District Court,
D. New Mexico.

July 26, 1985.

.Stephen T. Lecuyer, Shiprock, N.M., for plaintiffs.

Rodey Law Firm, Albuquerque, N.M., Graves Law Firm, Austin, Tex., Cantey Law Firm, Ft. Worth, Tex., Keleher & McLeod, Albuquerque, N.M., Law Offices of Jerry Saegert, Austin, Tex., Modrall Law Firm, Albuquerque, N.M., for defendants.

### MEMORANDUM OPINION

BURCIAGA, District Judge.

THIS MATTER comes before the Court on a Motion to Dismiss for lack of personal jurisdiction filed by Defendant The Amon Carter Museum of Western Art. The Defendants Hundred Arrows Press, Inc.; Mediatex Communication Corp.; Art Magazine Publishers, Inc.; and Communication Specialists, Inc., also moved the Court for dismissal, or, in the alternative, for summary judgment. The Court, having reviewed the memoranda and supporting materials submitted by the parties, and being otherwise fully advised in the premises, finds that the motions should be granted in part and denied in part.

Plaintiffs, Lillie Benally and her son Norman Benally, are both members of the Navajo Tribe of Indians and long-time residents of the State of New Mexico. In 1932, the photographer Laura Gilpin received permission from Mrs. Benally to take a still photograph of her and her young son Norman in the confines of their home on the reservation. The photograph showed Mrs. Benally in her native dress, holding the infant son in her arms. Prior to Laura Gilpin's death in 1979, the black and white print had been published on a

postcard and in five books and been exhibited approximately thirty times, all without the consent of the plaintiffs. The plaintiffs were unaware of these events because of their secluded life on the Navajo Reservation.

Upon Ms. Gilpin's death, her photograph collection was devised to the Amon Carter Museum of Western Art in Texas. The Museum has a procedure that when a mail order for a print of one of its publications is received, a form is mailed back which requests information about how the print is going to be used. Based on this information the Museum will either grant or refuse the request. There is also a copying and handling fee charged by the Museum for each reprint ordered.

In either 1980 or 1981, three of the four nonresident defendant-publishers: Hundred Arrows Press; Mediatex Communications; and Art Magazine, followed the above procedure and received, at their offices in Texas, a copy of the Benally print, along with copies of the other photos they had ordered. All three publishers used the photograph in question to accompany an article about either Ms. Gilpin's work or the Museum itself. The fourth publisher, Communication Specialists, Inc. [CSI], used the Benally photograph without the permission of the Museum. None of the defendant-publishers attempted to attain consent from either of the plaintiffs prior to publishing the photograph.

In August of 1981, Sophie Benally, the daughter-in-law of Grant and Lillie Benally, learned of the publication of the Benally photograph in *Four Winds* magazine (Hundred Arrows Press, Inc.) from a physician in Shiprock, New Mexico. She informed the Benallys of the publication of the photo. The plaintiffs became upset upon hearing the news because of the traditional Navajo belief that the publication of a photograph can have bad effects on the people who are the subjects of the photo.

In March of 1984, plaintiffs filed a Complaint charging Hundred Arrows Press, CSI, Mediatex Communications, Art Magazine and the Amon Carter Museum with unlawful public disclosure of private facts. The Complaint also charged Hundred Arrows Press, CSI and the Amon Carter Museum with misappropriation of likeness. The four defendant-publishers moved to dismiss the actions against them, or, in the alternative, moved for summary judgment. The Amon Carter Museum made a special appearance before this Court and moved to dismiss the charges against it for lack of personal jurisdiction. The Court will decide the jurisdictional issue first because "a lack of jurisdiction means an entire lack of power to hear or determine the case and the absence of authority over the subject matter or the parties." *Grace v. Oil Conservation Commission of New Mexico*, 87 N.M. 205, 208, 531 P.2d 939, 942 (1975).

■ As a general rule, federal courts sitting in diversity cases have personal jurisdiction to the extent permitted by the law of the forum. *Yarbrough v. Elmer Bunker & Associates*, 669 F.2d 614, 616 (10th Cir.1982). The court's jurisdiction is further subject to the limitations of the due process clause. *Id.* A federal district court can therefore only dismiss an action for lack of personal jurisdiction when the plaintiff's pleadings fail to establish *prima facie* that the jurisdictional requirements of both the statutory law and the constitutional standard have been met. *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir. 1975).

The two-fold inquiry begins with an examination of the relevant state statute. Plaintiffs seek personal jurisdiction under the New Mexico Long-Arm Statute, § 38–1–16 NMSA 1978. In *Winward v. Holly Creek Mills, Inc.*, 83 N.M. 469, 471, 493 P.2d 954, 956 (1972), the New Mexico Supreme Court interpreted the state statute as establishing a two-part test for asserting jurisdiction over a nonresident: "First, the defendant must have done one of the acts enumerated in the statute; and second, the plaintiff's cause of action must arise from defendant's doing the act."

■ Of the acts enumerated in the statute only two have been argued to apply in

this case. Section 38–1–16(A)(1) provides that a nonresident may be subject to the jurisdiction of the courts of New Mexico if his actions amount to "the transaction of any business within the state." The New Mexico Supreme Court has defined the doing or transacting of business in the following terms: "doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts." *Telephonic, Inc. v. Rosenblum,* 88 N.M. 532, 534, 543 P.2d 825, 827 (1975).[1]

Plaintiffs' pleadings establish that the Museum engaged in the following jurisdictional activities. The Gilpin will, which devised to the Museum the legal rights to the photograph, was probated in New Mexico. The Museum maintained continuous activity in New Mexico while arranging for the transfer of possession of the Gilpin photographs. The photograph in question, while distributed by the Museum in Texas, was later circulated in New Mexico by the defendant-publishers. The Museum has a practice of acquiring art objects from, and disseminating art objects and facsimilies, books and publications into New Mexico.

Plaintiffs concede that the above listed activities were not performed by the Museum for pecuniary gain. They assert, however, that the phrase "otherwise accomplishing an object" encompasses the Museum's forum-state transactions.

The question of whether the phrase "transacting business" includes noncommercial activity has not been addressed by the New Mexico courts.[2] Although the question is squarely before this Court it need not be resolved because the Court concludes that the second requirement of the two-part "nonresident jurisdiction" test has not been met.

Plaintiffs have failed to establish a close relationship between the jurisdictional activities related to their "transaction of business" claim and their cause of action. *Winward v. Holly Creek Mills, Inc.,* supra; see *Koplin v. Thomas, Haab & Botts,* 73 Ill.App.2d 242, 219 N.E.2d 646 (1966); *Morton v. Environmental Land Systems, Ltd.,* 55 Ill.App.3d 369, 370 N.E.2d 1106 (1977). The dates of the Museum's activities in the forum state and the date of the plaintiffs' awareness of the publications are too remote in time to satisfy the statutory requirement. The cause of action allegedly arose at the point in time, in either 1980 or 1981, that the Museum distributed the photograph in question to the defendant-publishers, but the majority of the Museum's jurisdictional activities occurred before or during the year 1979.

The plaintiffs allege that jurisdiction can be based, in the alternative, on

---

**1.** In *Kathrein v. Parkview Meadows, Inc.,* 23 State Bar of N.M. News & Views 869, 870 (N.M. App. Aug. 23, 1984), the New Mexico Court of Appeals held that "[i]n order to satisfy both statutory and constitutional requirements where jurisdiction is being asserted over a nonresident on the basis of transaction of business, three basic factors must coincide: (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice." This definition is narrower than the one adopted by the New Mexico Supreme Court in *Telephonic, Inc.;* therefore, while this Court takes note of the Court of Appeals' definition, it declines to use it.

**2.** Case law from the few courts that have decided the issue is divided: *North American Video*

*Corp. v. Leon,* 480 F.Supp. 213 (D.Mass.1979) (state long-arm statute, "transaction of business" provision, does not require that a nonresident defendant engage in commercial activity within the state); *San Juan Hotel Corp. v. Lefkowitz,* 277 F.Supp. 28 (D.P.R.1967) (nonresident who accepts credit within the state, whether or not it was accepted in connection with commercial matters, carries out business transactions within the state); *Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135 (1968) (if legislature had intended the "transaction of business" phrase to be interpreted in anything but its broadest legal sense, it would have categorized "business" into commercial and personal); *Lewis v. Curry College,* 89 Wash.2d 565, 573 P.2d 1312 (1978) (nonprofit institution of learning that supplies catalogues and material describing courses to those outside the state, does not, without more, thereby submit itself to the jurisdiction of those states).

another of the enumerated acts in the New Mexico Long-Arm Statute. Section 38-1-16(A)(3) provides that any nonresident committing a tortious act within the state becomes subject to the jurisdiction of the courts of New Mexico. Relying on the principles expressed in *Nelson v. Miller,* 11 Ill.2d 378, 143 N.E.2d 673 (1957), and *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), the New Mexico Court of Appeals held in *Roberts v. Piper Aircraft Corp.,* that a "tortious act" has been committed within the State of New Mexico when "negligent acts occur outside New Mexico which cause injury within New Mexico." 100 N.M. 363, 366, 670 P.2d 974, 977 (Ct.App. 1983).[3] The "effects" basis of jurisdiction is therefore satisfied when the "last event constituting an element of the tort takes place" in New Mexico. Robert C. Casad, *Jurisdiction in Civil Actions* 4-52 (1983).

Although the *Roberts* court linked the phrase "tortious act" to defendant negligence, the New Mexico Supreme Court has held that the same jurisdictional analysis is applicable in intentional tort cases. *Blount v. T.D. Publishing Corp.,* 77 N.M. 384, 390, 423 P.2d 421, 425 (1967).

Plaintiffs' Complaint charges the Museum with misappropriation of likeness and public disclosure, two forms of invasion of the right of privacy. The pleadings allege that the Museum distributed the photograph in question to the defendant-publishers in order for the Museum to further its institutional purposes and to provide it with additional advertising. The plaintiffs also claim that the publications caused them to suffer great mental anguish, shame, humiliation and fear. And finally, the plaintiffs assert that the subject matter of the photograph concerned the private life of the plaintiffs, publication of which was highly offensive to them.

Since plaintiffs need only establish a *prima facie* case of jurisdiction, the facts alleged in the pleadings, if made in good faith, could arguably satisfy the two requirements of the statute. *Eckles v. Sharman,* 548 F.2d 905, 908 (10th Cir.1977). Again, however, as with the "transaction of business" provision, it is not necessary to determine if plaintiffs' pleadings sufficiently alleged the facts needed to establish the technical violations of either of the invasions. Instead, where state courts have interpreted the "tortious act" and "transaction of business" provisions "to extend [a state's] personal jurisdiction as far as is constitutionally permissible under the due process clause," *Jones v. 3M Co.,* 107 F.R.D. 202, —— (D.N.M.1984), "the usual two-step analysis collapses into a single search of the outer limits of what due process permits." *Forsythe v. Overmyer,* 576 F.2d 779, 782 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *Swindle v. G.M.A.C.,* 101 N.M. 126, 679 P.2d 268 (N.M.App.1984); *accord Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1269 (9th Cir.1981). The Court is persuaded that to extend personal jurisdiction over the Museum would be to go beyond the outer limits of due process.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528, 53 U.S.L.W. 4541, 4544 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). "The rela-

---

**3.** The New Mexico Long-Arm Statute was adopted from the Illinois statute. While that does not make the Illinois courts' interpretations of their statute binding on New Mexico courts, it does make their interpretations persuasive. *Blount v. T.D. Publishing Corp.,* 77 N.M. 384, 423 P.2d 421 (1966).

tionship between the defendant and the forum must be such that it is 'reasonable ... to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagon v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 159, 90 L.Ed.2d 95 (1945) ). "The 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (quoting *Hansen v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958) ).

Applying these principles to the case at hand, plaintiffs assert that the facts alleged satisfy the "minimum contacts" requirement. The Court disagrees. The photograph in question was taken in 1932. Laura Gilpin's will was probated in 1979. Prior to August, 1981, the last loan of art work(s) by the defendant to a museum in New Mexico was in 1979. The Museum has only made ten such loans in the past twenty-four years and all have been on a not-for-profit basis. Of the two books published by the Museum in conjunction with the University of New Mexico Press, one has been out of print since 1974 and the other was not published until two years after the plaintiffs' cause of action arose. Neither book includes the photograph in question. Although the Museum bookstore fills orders sent by New Mexico residents, such sales have only amounted to approximately .0173 percent of the bookstore's annual sales for each of the years between 1977 and 1984. Furthermore, the Museum's book purchases from New Mexico residents have been infrequent in the past five years, and their acquisitions of New Mexico artists' photographs and prints have primarily been a result of solicitation by New Mexico resident dealers and brokers. All purchases were consummated in Texas and all were for exhibition or educational purposes and not for profit. The Museum has never published or exhibited the photograph in question in New Mexico, nor has it ever provided any New Mexico resident with the photograph for exhibition in this state.[4]

As noted, the jurisdictional inquiry focuses on "the relationship among the defendant, the forum and the litigation." *Shaffer v. Heitner,* 433 U.S. at 204, 97 S.Ct. at 2580. Plaintiffs contend that the "effects" theory correctly represents the Museum's relationship to the forum, and with the above listed contacts, that the theory is, in this case, consistent with due process.

The plaintiffs rely heavily on the Supreme Court case of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804, 52 U.S.L.W. 4349 (1984), to support their proposition. In *Calder* the Court approved of the "effects" test as a valid basis for an assertion of jurisdiction, but only under limited circumstances. The defendants' actions, in that case, were expressly aimed at the forum, they knew that their actions "would have a potentially devastating impact upon the respondent" and they knew "that the brunt of [the] injury would be felt by respondent in the State in which she [lived] and [worked]." 52 U.S.L.W. at 4351. The "focus" of the defendants' activities was clearly the plaintiff. Furthermore, the defendants were the "primary participants in an alleged wrongdoing intentionally directed at a California resident...." *Id.*

*Calder* can be distinguished from the case at bar, in that the defendant Museum can, at most, be charged with mere untargeted tortious conduct. The Museum's act in distributing the photograph was not expressly aimed at New Mexico because it knew that the defendant-magazines had multistate circulations. The Museum did

---

**4.** The facts stated above were taken from both the pleadings and the evidentiary material before the Court. "[A]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir.1965) (citing *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939) ).

not know its action would have a "potentially devastating impact" upon the plaintiffs because it knew that the photograph in question had been published and exhibited numerous times in the past and that it was only one among a group of photos distributed to each of the publishers. Finally, the Museum was not a primary participant in the publication of the photograph, but simply a supplier of information. Without more, "it cannot be said that *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable...." *Rush v. Savchuck,* 444 U.S. 320, 328, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (emphasis in original).

Consistent with the above reasoning is this Court's decision in *Jones v. 3M, supra.* In that case, two of the three nonresident defendants were involved in the research, development and testing of radioactive Iodine–125 [I–125] seeds, used in the treatment of cancer. The same defendants also published articles and disseminated information about the seeds. The third defendant manufactured and distributed the I–125 seeds in reliance on this research. This Court refused to extend personal jurisdiction over the first two defendants, even though the resident-plaintiffs suffered injuries proximately caused by the use of the seeds in New Mexico. The Court expressly rejected the "effects" theory because it found it contrary to "traditional notions of fair play and substantial justice," *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), to hale the defendants "into court in any jurisdiction where their research was used and relied upon," without having done some additional act to purposefully avail themselves of the laws of the forum. *Jones v. 3M, supra* at ——. "The publication of information that fortuitously finds its way into this forum is not such an act." *Id.*

■ Like *Jones,* the mere supplying of information, which is then published and distributed into the forum by another, cannot constitute an act of purposeful availment of forum laws. "An assertion of personal jurisdiction based on the dissemination of information into the forum would have far-reaching results." *Id.* The adoption of such a policy could cause other similarly situated defendants to be haled into court in any jurisdiction where their information was used, irrespective of whether they had sufficient contacts with the forum state to expect such a development. The limits of due process do not extend that far.

■ The remaining four defendants have not challenged the Court's jurisdiction; however, Hundred Arrows Press, CSI and Art Magazine have raised statute of limitation defenses. Since all parties have submitted materials outside the pleadings on this and other issues, the Court has decided to exercise the discretion given it by Fed.R.Civ.P. 12(b)(6) and treat the Motions to Dismiss as Motions for Summary Judgment. A Motion for Summary Judgment is proper only when "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant bears the burden of proving entitlement to summary judgment beyond a reasonable doubt. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975). It is then the Court's duty to view the record in the light most favorable to the party opposing the motion and if differing ultimate inferences can be drawn from the facts and evidentiary material, summary judgment should be denied. *Exnicious v. United States,* 563 F.2d 418, 424 (10th Cir.1977).

■ The law of the forum State governs on matters of procedure, Restatement (Second) of Conflict of Laws § 122 (1971), and since statutes of limitations are considered procedural in New Mexico, *Sierra Life Insurance Co. v. First National Life Insurance Co.,* 85 N.M. 409, 512 P.2d 1245 (1973), New Mexico law will apply. The issue raised by the statute of limitations defense is whether the tort of invasion of privacy should be characterized as

one cause of action or four for purposes of determining the applicable statute of limitations.

The tort of invasion of privacy has been described as "not one tort, but a complex of four ... which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'" Prosser, *Torts* § 117 (4th ed. 1971). The four "subtorts" consist of: (1) the right to be free from unreasonable intrusion upon one's seclusion; (2) the right to prohibit the appropriation of one's name or likeness; (3) the right to be free from unreasonable publicity about one's private life; and (4) the right to prohibit publicity that unreasonably places one in a false light before the public. Restatement (Second) of Torts § 652A (1977).

Although there is no decision by the New Mexico courts in which the Restatement (Second) definition of the tort of invasion of privacy is specifically adopted, there are pre-Restatement (Second) decisions that cite to Prosser's four-part definition of the tort. In the first of these cases, *Bitsie v. Walston*, 85 N.M. 655, 515 P.2d 656 (Ct. App.1973), the New Mexico Court of Appeals, while recognizing two of Prosser's four divisions of the tort, chose to follow the comprehensive definition given invasion of privacy in the then current Restatement of Torts § 867 (1939), since "the factual aspects of [the] tort [had] not as yet been delineated in New Mexico decisions." *Id.* at 657, 515 P.2d 656. Two years after *Bitsie*, in *McNutt v. New Mexico State Tribune Co.*, 88 N.M. 162, 538 P.2d 804 (Ct.App.1975), the New Mexico Court of Appeals was again faced with the tort of invasion of privacy, and this time recognized all four of Prosser's theories of liability.

Contrary to Prosser and the Restatement (Second) of Torts, defendant Hundred Arrows Press argues that this Court must find the holding in *Bitsie* controlling as to the character given the tort of invasion of privacy in New Mexico for purposes of

determining the applicable statute of limitations. Since the Restatement (Second) characterization of the tort has not been an issue before the courts of New Mexico, and this is a diversity case, this Court must attempt to predict what the state courts would hold if squarely faced with the issue. *City of Aurora, Colorado v. Bechtel Corp.*, 599 F.2d 382 (10th Cir.1979). "In so doing, we may consider all resources, including decisions of New Mexico, other states, federal decisions, and the general weight and trend of authority." *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567 (10th Cir.1980).

The adoption and expansion of Prosser's work in the new sections of the Restatement, including attributing specific elements to each cause of action, was a result of the development of the tort in the courts into this "complex of four distinct wrongs." Restatement (Second) of Torts § 652A comment b. In the years when Chapter 28A (§§ 652A–I) was in its tentative draft form many state and federal courts cited to its four-part definition with approval, including the United States Supreme Court. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 493, 95 S.Ct. 1029, 1045, 43 L.Ed.2d 328 (1975); *Cantrell v. Forest City Publishing Co.*, 484 F.2d 150, 155 (6th Cir.1973), *rev'd on other grounds*, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974); *McNally v. Pulitzer Publishing Co.*, 532 F.2d 69, 78 (8th Cir.), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Galella v. Onassis*, 353 F.Supp. 196, 229 (S.D.N.Y. 1972); *Neff v. Time, Inc.*, 406 F.Supp. 858, 861 (W.D.Pa.1976); *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal.App.3d 880, 118 Cal.Rptr. 370, 375 (1974); *Midwest Glass Co. v. Stanford Development Co.*, 34 Ill.App.3d 130, 339 N.E.2d 274, 277 (1975); *Rinsley v. Frydman*, 221 Kan. 297, 559 P.2d 334, 339 (1977); *Hollander v. Lubow*, 277 Md. 47, 351 A.2d 421, 424–25, *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Deaton v. Delta Democrat Publishing Co.*, 326 So.2d 471, 473 (Miss.1976); *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 307 N.Y.S.2d 647, 657, 255 N.E.2d 765 (1970). Since Chapter

28A's permanent adoption, additional jurisdictions have cited to it with approval, including the Tenth Circuit. *Gilbert v. Medical Economics Co.,* 665 F.2d 305, 310 (10th Cir.1981); *Birnbaum v. United States,* 588 F.2d 319, 323 (2d Cir.1978); *Zerilli v. Evening News Association,* 628 F.2d 217, 221 (D.C.Cir.1980); *Gonzalez v. Leonard,* 497 F.Supp. 1058, 1068 (D.Conn.1980); *Dresbach v. Doubleday & Co., Inc.,* 518 F.Supp. 1285, 1287 (D.D.C.1981); *Michigan United Conservation Clubs v. CBS News,* 485 F.Supp. 893, 903 (W.D.Mich.1980), *aff'd,* 665 F.2d 110 (6th Cir.1981); *Martin v. Municipal Publications,* 510 F.Supp. 255, 259 (E.D.Pa.1981); *Dodrill v. Arkansas Democrat Co.,* 265 Ark. 628, 590 S.W.2d 840, 844 (E.D.Va.), *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980); *CBM of Central Arkansas v. Bemel,* 274 Ark. 223, 338, 623 S.W.2d 518 (1981); *Forsher v. Bugliosi,* 26 Cal.3d 792, 163 Cal.Rptr. 628, 608 P.2d 716, 725 (1980); *Howard v. Des Moines Register & Tribune Co.,* 283 N.W.2d 289, 291 (Iowa 1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980); *McCall v. Courier-Journal & Louisville Times,* 623 S.W.2d 882, 887 (Ky. 1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982); *Jaubert v. Crowley Post-Signal, Inc.,* 375 So.2d 1386, 1388 (La.1979); *Fry v. Ionia Sentinel-Standard,* 101 Mich.App. 725, 300 N.W.2d 687, 689 (1980); *Brown v. Mullarkey,* 632 S.W.2d 507, 509 (Mo.App.1982); *Sustin v. Fee,* 69 Ohio St.2d 143, 431 N.E.2d 992, 993 (1982); *McCormack v. Oklahoma Publishing Co.,* 613 P.2d 737, 739 (Okla.1980); *Kalian v. People Acting Through Com. Effort,* 122 R.I. 429, 408 A.2d 608, 609 (1979); *Montgomery Ward v. Shope,* 286 N.W.2d 806, 808 (S.D.1979); *Mark v. Seattle Times,* 96 Wash.2d 473, 635 P.2d 1081, 1094 (1981), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982).

The above facts have persuaded this Court that, if faced with the same facts and issues, the Supreme Court of New Mexico would interpret its laws as establishing four causes of action under the tort of invasion of privacy, each with its own statute of limitations. Such a conclusion,

however, does not end this Court's "Erie-guessing." Since the New Mexico courts have not yet decided the nature of the tort, it follows that they also have not yet decided the nature of each of the four causes of action for purposes of applying statutes of limitations. Again, this Court must look to the decisions of other states and the weight and trend of authority in order to predict how the New Mexico courts would treat the various "subtorts" for statute of limitations purposes. Plaintiffs are claiming violations of only two of the four "subtorts," misappropriation of likeness and unlawful public disclosure.

The tort of misappropriation of likeness occurs when someone "appropriates to his own use or benefit the name or likeness of another." Restatement (Second) of Torts § 652C. Comment (a) to § 652C states that "[t]he interest protected by the rule stated in this Section is the interest of the individual in the exclusive use of his own identity [and therefore] the right created by it is in the nature of a property right." Many state and federal jurisdictions agree with the Restatement on this point. *Uhlaender v. Hendricksen,* 316 F.Supp. 1277 (D.Minn.1970); *Memphis Development Foundation v. Factors, Etc.,* 441 F.Supp. 1323 (W.D.Tenn.1977), *aff'd,* 578 F.2d 1381 (1978); *Ettore v. Philco Television Broadcasting Corp.,* 229 F.2d 481 (3d Cir.), *cert. denied,* 351 U.S. 926, 76 S.Ct. 783, 100 L.Ed. 1456 (1956); *Haelan v. Topps Chewing Gum,* 202 F.2d 866 (2d Cir.1953); *Canessa v. J.I. Kislak, Inc.,* 97 N.J.Super. 327, 235 A.2d 62 (1967); *Motschenbacher v. R.J. Reynolds Tobacco Co.,* 498 F.2d 821 (9th Cir.1974). *Cf. Cepeda v. Swift & Co.,* 415 F.2d 1205 (8th Cir.1969) (dictum); *O'Brien v. Pabst Sales Co.,* 124 F.2d 167 (5th Cir.1941) (dissent); *Sharman v. C. Schmidt & Sons, Inc.,* 216 F.Supp. 401 (E.D.Pa.1963) (dictum).

In each of the cited cases the court concluded that any attribute of a person's identity could have commercial value. "Property," as defined by Black's Law Dictionary 1095 (5th ed. 1979), is a term "said to extend to every species of valuable right

and interest." It would therefore appear that, given the opportunity to decide the issue, the New Mexico Supreme Court would classify a name or likeness as a property interest for purposes of determining the applicable statute of limitations.

As a property claim, the misappropriation cause of action is governed by § 37-1-4 of the New Mexico Statutes Annotated 1978. While that section provides for a four year statute of limitations, § 37-1-6 further states that "actions for injuries to, or conversion of property [do not accrue] until the ... injury or conversion complained of ... [has] been discovered by the party aggrieved." Since plaintiffs did not know of the publications until August of 1981, they had until August of 1985 in which to bring this suit. Plaintiffs' Complaint was filed in March of 1984; therefore the statute of limitations is not a bar to the misappropriation claims.

 In order for an appropriation to be tortious, the defendant must be seeking to benefit from the use of the plaintiff's name or likeness. The value of the plaintiff's likeness is not appropriated:

[W]hen it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because ... his appearance is brought before the public, since [it is not] in any way a private matter and [is] open to public observation. ... The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness.

Restatement (Second) of Torts § 652C comment d (citations omitted). Thus, a distinction must be made between an incidental use of a name or photograph and a deliberate use of the same to exploit its value for advertising or trade purposes.

In *Jenkins v. Dell Publishing Co.*, 251 F.2d 447, 450 (3d Cir.), *cert. denied*, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958), the court defined commercial uses as "those in which an individual's picture or story has been associated with something else in commercial advertising." As an example of such a use, the court cited *Pavesich v. New England Life Insurance Co.*, 122 Ga. 190, 50 S.E. 68 (1905). In *Pavesich* the defendant had published in the newspaper an unauthorized photograph of the plaintiff depicted as soliciting business for the defendant insurance company. A fabricated and false quotation accompanied the photograph. The court allowed a claim for misappropriation, holding that "[t]he advertisement, by soliciting sales, was of direct pecuniary benefit to the defendant." *Nelson v. Times*, 373 A.2d 1221 at 1224 (Me.1977).

A Maine court distinguished *Pavesich* from the case before it in which a newspaper had published, in connection with a book review, an unauthorized photograph of a young Indian boy in a pastoral setting. *Nelson v. Times*, 373 A.2d 1221 (Me.1977). The Maine court dismissed the misappropriation claim, holding that "the only similarity between the holding [in *Pavesich* ] and the instant case is the unauthorized use of the photograph." 373 A.2d at 1224.

Another instructive case is *Tropeano v. Atlantic Monthly Co.*, 379 Mass. 745, 400 N.E.2d 847 (1980), in which a magazine ran a story entitled "After the Sexual Revolution." The plaintiff was shown along with several other people, in an unauthorized photograph used to illustrate the article. There was no mention nor identification of the plaintiff in the article. The court there held that:

Here the photograph was published in connection with what is apparently a sociological commentary, and not as a means of soliciting sales or in association with an advertisement of any kind. The article or story involved, whether it be viewed as an effort to inform or entertain the readership, is a legitimate, noncommercial use. The fact that the defendant is engaged in the business of publishing the Atlantic Monthly magazine for profit does not by itself trans-

form the incidental publication of the plaintiff's picture into an appropriation for advertising or trade purposes.

400 N.E.2d at 851.

■ In this case, both Hundred Arrows Press and CSI have been charged with misappropriation of likeness. Hundred Arrows Press denies the misappropriation claim and states in its responsive pleading as an undisputed fact that its use of the Benally photograph was for illustrative and not commercial purposes. Hundred Arrows Press alleges that it published the photograph in connection with an article on the work of the photographer Laura Gilpin. The defendant also briefed a condensed statement of the law of misappropriation as outlined above to support the position that its use of the Benally photograph was incidental.

The New Mexico Supreme Court stated in *Goodman v. Brock*, 83 N.M. 789, 792, 498 P.2d 676, 679 (1972):

Unquestionably the burden was on defendants to show an absence of a genuine issue of fact, or that they were entitled as a matter of law for some other reason to a summary judgment in their favor. [Citations omitted] However, once defendants had made a prima facie showing that they were entitled to summary judgment, the burden was on plaintiff to show that there was a genuine factual issue and that defendants were not entitled as a matter of law to summary judgment. [Citations omitted]

This Court's own review of the Hundred Arrows Press publication has convinced it that the defendant has met its burden and made a *prima facie* showing that there is no genuine issue of fact as regards its use of the Benally photograph. Since plaintiffs have failed to sufficiently carry their burden on this matter, the defendant's Motion for Summary Judgment on the issue of misappropriation is granted.

Defendant CSI failed to brief the issue of misappropriation of likeness, incorrectly concluding that this Court would find *Bitsie* controlling on the matter and treat the several allegations of the plaintiffs as one cause of action. CSI did not state as an undisputed fact that its use of the photograph was for noncommercial purposes, but merely denied such in its answer.[5] This Court therefore concludes that CSI has not made a *prima facie* showing that it is entitled to summary judgment. Since the Court is bound to view the record in the light most favorable to the party opposing the motion, the Court denies CSI's Motion for Summary Judgment on the issue of misappropriation of likeness.

Plaintiffs have charged all four remaining defendants with unlawful public disclosure of private facts. Only Hundred Arrows Press, CSI and Art Magazine have raised statute of limitations defenses. The nature of this cause of action for purposes of a statute of limitations defense must be decided on the weight and trend of authority since this Court is again without guidance from the New Mexico courts.

■ The tort of unlawful public disclosure of a private fact of another subjects the publisher to liability only "if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement (Second) of Torts § 652D. "One to whose private life publicity is given, under § 652D, may recover for the harm resulting to his reputation from the publicity.... The plaintiff may also recover damages for emotional distress or personal humiliation...." *Id.*, § 652H comments (a) & (b). Plaintiffs allege that the publication of the photograph caused them to suffer the above stated injuries. New Mexico's Limitation-of-Actions Statute, § 37–1–8 NMSA 1978, states that "[a]ctions must be brought ... for an injury to the person or reputation of any per-

---

**5.** While denying that it published the photograph to further its commercial purposes, Defendant's Answer at 4, CSI admits for jurisdictional purposes that it published the photograph for the purpose of soliciting business from purchasers of *Four Winds* magazine. Defendant's Answer at 2.

son, within three years." Unless the injury is the result of medical malpractice, the statute begins to run from the time of the injury and not the time of the negligent act or discovery. *New Mexico Electric Services Co. v. Montanez*, 89 N.M. 278, 551 P.2d 634 (1976).

In the case of an alleged unlawful publication, "the gravamen of the claimed injury is the *publication* of information." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 489, 95 S.Ct. 1029, 1043, 43 L.Ed.2d 328 (1974) (emphasis added); *see Poteet v. Roswell Daily Record, Inc.*, 92 N.M. 170, 584 P.2d 1310 (Ct.App.1978); *McNutt v. New Mexico State Tribune Co., supra.* Plaintiffs must therefore have brought their claims within three years of the publication dates of each of the magazine volumes containing the photograph in question in order for the claims not to be barred by the statute of limitations. Both Hundred Arrows Press and CSI published the photograph in Autumn of 1980, while both Mediatex and Art Magazine published it in their April, 1981, editions. Since plaintiffs did not file their Complaint until March, 1984, the statute of limitations has run on their unlawful public disclosure claims against Hundred Arrows Press and CSI. Plaintiffs still have a cognizable cause of action for unlawful public disclosure, however, against Mediatex and Art Magazine.

■ In order for the Court to find defendants liable for unlawful public disclosure, a threshold determination must be made as to whether or not an exposure of private facts occurred. In *Nelson v. Times, supra,* the court found the publication of an unauthorized photograph of a young Indian boy insufficient to constitute an exposure of private facts. The court stated:

> Merely exposing a person to undesired publicity is insufficient per se to constitute a tort even though the exposure was unauthorized.... Certainly it could not be argued that a person's normal facial appearance is of private concern only.... In short, the publication disclosed nothing about the private life of

this infant plaintiff that was unknown to anyone who might see him.

373 A.2d at 1225.

In a Louisiana case, the plaintiffs brought suit against the defendant newspaper for unauthorized publication of a photograph of their home, captioned with a true, but unflattering statement about the poor physical condition of the home. The photograph was taken from a public street and neither the street address nor the plaintiffs' names appeared in the newspaper. As in *Nelson,* the court declined to find the defendant liable for invasion of privacy for merely giving further publicity to what the plaintiff had left open to the public eye. *Jaubert v. Crowley Post-Signal, Inc.,* 375 So.2d 1386, 1388 (La.1979).

The Court is aware that in *Nelson* and *Jaubert* the plaintiffs did not consent to the photographs of themselves or their property, taken from a public vantage point, while in the present case, the plaintiffs consented to the photograph, taken in their home; however, it finds the case cannot be distinguished on these facts. When the plaintiffs consented to pose for the photograph it became irrelevant whether they were in a public or private place. Furthermore, the photograph does not expose any more to the public eye than would be exposed to one who encountered plaintiffs in public.

Plaintiffs make the additional argument that the court in *McNutt v. New Mexico State Tribune Co., supra,* held that only information placed on a public record is "public." Plaintiffs have misinterpreted the court's reasoning. The court specifically limits its discussion of the law of invasion of privacy to information contained on public records because the plaintiffs brought suit for publication of their names and addresses. The court quoted from Prosser in support of its holding that an individual's name and address are public facts by virtue of their being published in public records. Dean Prosser's reasoning was subsequently included in § 652D comment (b) of the Restatement (Second) of Torts. Section 652D comment (b) goes on

to say that, "[s]imilarly, there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye. Thus he normally cannot complain when his photograph is taken while he is walking down the public street and is published in the defendant's newspaper." The *McNutt* holding therefore was fact-specific and not intended to be a general statement of the law of unlawful public disclosure.

From the foregoing the Court concludes that there has not been an exposure of private facts. "The right of privacy may not be extended to prohibit *any* publication of matter which may be of public or general interest, but rather the 'general object in view is to protect the privacy of private life, and to whatever degree and in whatever connection a man's life has ceased to be private, before the publication under consideration has been made, to that extent the protection is to be withdrawn.'" *Gill v. Hearst Publishing Co.*, 40 Cal.2d 224, 253 P.2d 441, 443 (1953) (emphasis in original).[6]

Even assuming, *arguendo*, that the matter published was private, the publication does not rise to the level of being highly offensive. In the case of *Blount v. T.D. Publishing Corp.*, 77 N.M. 384, 388, 423 P.2d 421, 424 (1966), the New Mexico Supreme Court stated that "the right of privacy is to be applied to the individual of ordinary sensibilities, not the super-sensitive." The New Mexico Court of Appeals applied this standard in *Bitsie v. Walston, supra*, where a photograph was taken of a young Navajo child with the consent of the father. A sketch from the photograph was subsequently made, which in turn was reproduced onto note cards without the plaintiffs' consent and sold to help finance a pre-school for children with cerebral palsy. A local newspaper ran an article on the card sale, stating the purpose of the sale and publishing a photograph of the design identifying both the child and the artist. The plaintiffs brought suit alleging that because the article linked the healthy child to the disease of cerebral palsy, the child would have bad luck later in life, according to Navajo tradition. The court ruled that no invasion of privacy had occurred as a matter of law "because there is no evidence that, as a matter of fact, the newspaper story offended persons of ordinary sensibilities.... We cannot equate an offense to persons holding a traditional belief with an offense to persons of ordinary sensibilities because: (1) the tort relates to the customs of New Mexico at this time and does not extend to 'traditional' beliefs." 85 N.M. at 658–59, 515 P.2d at 662.

Plaintiffs in this case are claiming that the publication is offensive based on the traditional Navajo belief that "the publication of photographs can have bad effects on the people who are in the published photographs." Declaration of Lillie Benally at 2. Plaintiffs' pleadings are silent on the effect of the publication on the sensibilities of those who do not hold traditional Navajo beliefs. Applying the reasoning of *Blount* and *Bitsie* to the facts, the Court therefore concludes that plaintiffs have failed to establish that a person of ordinary sensibilities would be offended by the publication of the Benally photograph.[7]

---

6. The Court is satisfied that there was no exposure of private facts, therefore, it is not necessary to address the waiver and estoppel defenses raised by defendants.

7. Plaintiffs allege that there is an additional element of the tort of unlawful public disclosure to be considered when evaluating the offensiveness of the publication, that is, whether the defendants should have known that the photograph would offend persons of ordinary sensibilities. Plaintiffs cite to *Bitsie* as the source of this additional element and argue that "Hundred Arrows knew or should have known of Native American and Navajo attitudes toward photography, and that the publication of the Gilpin photograph would be offensive to plaintiffs." Plaintiffs' Memorandum in Response to Motion to Dismiss and/or Summary Judgment of Defendants Hundred Arrows Press, Inc., Mediatex Communication Corp., and Communications Specialist, Inc. at 15. As has been stated previously, the court in *Bitsie* was relying on § 867 of the Restatement of Torts in analyzing the claim of invasion of privacy. The Restatement (Second) of Torts is silent on the issue of the subjective knowledge of the defendant as it relates to unlawful public disclosure. Since this Court has determined that the New Mexico courts would apply the definition of the tort of

Section 652D of the Restatement (Second) of Torts requires that the matter publicized be both highly offensive to a reasonable person *and* not of legitimate public concern, in order for there to be an unlawful publication of private facts. The Court's conclusion that the publication was not highly offensive eliminates the need to rule on the newsworthiness issue.

Since, as a matter of law, there was no publication of private facts, summary judgment is granted. An Order will be entered in accordance with this opinion.

invasion of privacy as delineated by the Restatement (Second) of Torts, the issue of whether the

defendants should have known that the photograph would offend the plaintiffs is irrelevant.