Argued October 31, 1966, affirmed February 15, 1967

HAMILTON, *Appellant, v.* CROWN LIFE
INSURANCE COMPANY ET AL,
*Respondents.*

423 P. 2d 771

*Joseph D. Balfe,* Heppner, argued the cause for appellant. With him on the briefs were Winter & Balfe, Heppner, and Roy Kilpatrick and Daniel J. Wolke, Canyon City.

*George L. Wagner,* Portland, argued the cause for respondents. With him on the brief were James C. Dezendorf and McColloch, Dezendorf & Spears, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

Plaintiff appeals from a judgment for defendants entered after the trial court ruled that she had not stated a cause of action for an invasion of her right of privacy.

The alleged facts challenged by the demurrer are quoted from the complaint:

"II.

"Plaintiff was the beneficiary of a certain life insurance policy sold by defendant, Crown Life Insurance Company to plaintiff's husband; that on or about September 20, 1965, plaintiff's hus-

band died a violent death by his own hands near Heppner, Oregon, plaintiff's place of residence.

"III.

"On or about November 10, 1965, defendant, Bill M. Russell, acting for defendants, Crown Life Insurance Company, and Brooks Claridge, and in the course of his employment and for their benefit personally delivered to the plaintiff a check from defendant, Crown Life Insurance Company, made out in the name of the plaintiff as payee.

"IV.

"On or about November 10, 1965, and before said check was delivered to the plaintiff, defendant, Bill W. Russell, acting for defendants, Crown Life Insurance Company and Brooks Claridge and in the course of his employment and for the benefit of said defendants, personally contacted several persons in Heppner, Oregon, where plaintiff was residing, and disclosed the contents of said check to these various persons by displaying said check or reciting its content.

"V.

"The * * * [above-described conduct was intended to advertise the defendants'] business and to sell the life insurance policies of Crown Life Insurance Company.

"VI.

"It was known to the defendants, and each of them, that plaintiff's husband suffered a violent death at his own hands and that the said check in plaintiff's name was being paid to plaintiff as a result of her husband's death; all of which was conveyed or made known, by defendant, Bill M. Russell, to the persons contacted by said defendant as mentioned above * * *."

Plaintiff prayed judgment for general damages for outrage, humiliation, embarrassment, and mental suffering.

One type of invasion of privacy was recognized by this court in *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438, 138 ALR 1 (1941). The case discussed developments then current in the field, and held that an action would lie for falsely attributing to the plaintiff an opinion, statement, or ideology, whether or not the attribution in itself was defamatory or degrading.

■ No other Oregon decision has attempted to define the perimeter of an individual's right of privacy. It may be assumed that the unauthorized publication of one's name and the details of his personal life for commercial purposes has been, in this state, an actionable wrong. For such a wrong, however, recovery is now substantially limited. When the action for damages can be said to run afoul the speech and press guarantee of the United States Constitution, the action will not lie. *Time, Inc. v. Hill,* 385 US 374, 87 S Ct 534, 17 L Ed 2d 456 (1967). (That decision also contains a comprehensive bibliography of recent cases and materials on the subject of privacy.)

It is not necessary to a decision of this case to discuss in detail the potential impact of *Time, Inc. v. Hill,* supra, upon the local private law of privacy. We assume, without deciding, that some remnant of existing law still applies to commonly recognized invasions of privacy. See separate opinion of Harlan, J., in *Time, Inc. v. Hill,* 385 US at 402, 87 S Ct at 549, 17 L Ed 2d at 475. We do not reach the constitutional question in this case, however, because the complaint before us does not allege facts sufficient to constitute a cause of action.

■ The complaint alleges no false attribution, no intrusion, and no appropriation of a commercially valuable testimonial or endorsement. The complaint does

allege an unauthorized disclosure of private facts. The defendants exploited their special knowledge of the plaintiff's private business affairs in order to sell life insurance. The plaintiff contends that every unauthorized disclosure of personal information automatically creates a right of action. We do not believe the right of privacy is that broad.

It must be conceded that the defendants' conduct was offensive and boorish. It was in complete disregard of the plaintiff's wishes and feelings, and was no doubt well outside the ethical norms of the insurance industry. While courts might deplore the bad taste exhibited by the defendants, it is recognized that there are "some shocks, inconveniences, and annoyances which members of society in the nature of things must absorb without right of redress." *Davis v. General Finance & Thrift Corp.,* 80 Ga App 708, 711, 57 SE2d 225 (1950). And see *Sidis v. F-R Pub. Corporation,* 113 F2d 806, 138 ALR 15 (2d Cir), cert. denied, 311 US 711, 61 S Ct 393, 85 L Ed 462 (1940). For a case allowing recovery, see *Melvin v. Reid,* 112 Cal App 285, 297 P 91 (1931), where a motion picture portrayed plaintiff's early life as a prostitute.

■ In the case at bar, the husband's suicide was, for a time, notorious enough to be newsworthy. The disclosure of facts surrounding his death was not actionable. See, on suicide and privacy, *Metter v. Los Angeles Examiner,* 35 Cal App 2d 304, 95 P2d 491 (1939).

■ The disclosure to strangers of the fact that the husband had left the plaintiff some life insurance, while distinctly a private matter, would not be substantially more embarrassing to an ordinary reasonable person in plaintiff's position than would have been a disclos-

ure to strangers that her husband had left her a safe-deposit box full of securities, or a substantial checking account in the bank. When the facts alleged in the complaint are examined in the light of what would be offensive to the ordinary reasonable person, the injury is not one that would justify resort to the courts for damages. See Kalven, *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 Law & Contemp Prob 326 (1966).

Affirmed.