487 So.2d 207 (1986)
Irene CANDEBAT and James Candebat, Sr.
v.
N.J. FLANAGAN, A.D. Burns, and the National Motorist Association, Inc., a Mississippi Corporation.
No. 55374.
Supreme Court of Mississippi.
April 16, 1986.
*208 George E. Gillespie, Jr., Joel Johnson, Gillespie & Rogers, Hattiesburg, John V. Woodfield, Rose & Woodfield, Gulfport, for appellants.
Leslie Scott Sheffield, Bryan, Nelson, Allen, Schroeder & Cobb, Gulfport, for appellees.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the order of the Circuit Court of Harrison County directing a verdict for the defendant in a civil suit. Finding the trial judge in error, we reverse.
The National Motorist Association is a Mississippi corporation owned and operated by the family of N.D. Burns of Gulfport. It offers motorists various emergency road services and reimbursement of certain costs in the manner of other similar automobile associations. The association has an accident coverage program which provides that members will receive $60 per day for every day of hospitalization up to 300 days.
In November 1977, James Candebat, a tire salesman, bought a membership in the National Motorist Association (NMA) from its salesman, defendant N.J. Flanagan.
On December 12, 1977, Candebat and his family were involved in a collision in Gulfport. A drunk driver with no insurance drove his car head-on into the Candebats' pickup truck. Candebat's wife, Irene, suffered numerous serious injuries in this crash. She was in a coma for almost a month and was hospitalized for more than three months. During this crisis Mr. Candebat took leave of absence from his job in order to attend his wife and look after their children. During this period Candebat frequently encountered Flanagan at the hospital and engaged him in conversation. During one of these conversations, Candebat confided that he was uncertain as to whether he would retain his present job. Flanagan intimated that there might be a position at NMA for Candebat; Candebat expressed some interest in the possibility.
The association duly paid the Candebats their hospitalization allowance. Beginning in late February or early March, James Candebat began receiving inquiries from friends and even strangers about his wife's accident and the benefits they had received from the association. In the course of these various discussions, Candebat received information that the NMA's salesmen were using a sales kit which contained information about his wife's accident and copies of the checks mailed to them. In June or July of 1978, Candebat called the association's office to complain about the use of this information. Nonetheless, the unwelcome attention of outsiders persisted, together with rumors that the use of this information was continuing. Candebat then retained a lawyer who wrote a letter to the association dated October 27, 1978, asking that the association desist from this practice. The association did not reply, but issued a sales bulletin ordering its sales force to stop using the Candebat material in their promotions. Rumors continued and on December 11, 1978, the Candebats' lawyer mailed the association another letter of complaint. This time the association, by its president, A.D. Burns, answered and assured Candebat that the practice had been discontinued. Flanagan came to Candebat's work place and apologized personally, pledging that the practice had been halted. However, there was testimony *209 that as late as February 1979 the Candebat materials were still being used, even by Flanagan himself.
On December 4, 1979, the Candebats filed a complaint in the Circuit Court of Harrison County charging the NMA, along with its president, Burns, and Flanagan, with invasion of their privacy through the appropriation of their names for commercial purposes without their consent. The complaint sought $50,000 in actual damages and $50,000 against each defendant in punitive damages.
The cause was heard on August 2, 1982. At trial, the Candebats indicated their deep distress at knowing that the details of their personal tragedy had been divulged to strangers. Mrs. Candebat testified that she had grown so nervous that she feared to remain in her house alone.
At the close of the plaintiffs' case-in-chief, the trial judge directed a verdict for the defendant, holding that there had been no showing of damage to the Candebats owing to the association's conduct. Shortly thereafter, the Candebats perfected this appeal.

LAW
The trial judge granted the motion for directed verdict after stating his opinion that in order to recover for an invasion of privacy, one must specify his damages, and for punitive damages to be available, there must be "malice, fraud, insult, [or] wanton and reckless disregard of plaintiff's rights". The Candebats argue on appeal that he misunderstood the very nature of the tort of invasion of privacy.
Although actions for the invasion of privacy have been rare in Mississippi, the tort has received almost universal recognition in the United States. Every state except Rhode Island provides either statutory or common law relief for it. Prosser & Keeton, The Law of Torts, § 118 (5th Ed. 1984). Mississippi gave implicit recognition to the tort in 1951. Martin v. Dorton, 210 Miss. 668, 672-73, 50 So.2d 391, 393 (1951). The recognition was made explicit in Deaton v. Delta Democrat Publishing Co., 326 So.2d 471, 473 (Miss. 1976). In this century, the doctrines surrounding the tort and the right to privacy have undergone rapid and extensive development. In Re Brown, 478 So.2d 1033, 1039-1040 (Miss. 1985). As Prosser remarks, "What has emerged is no simple matter. As it has appeared in the cases thus far decided, it is not one tort, but a complex of four." Prosser, § 117 at 851. As enumerated by Prosser, and recognized by this Court in Deaton v. Delta Democrat Publishing Co., 326 So.2d 471, 473 (Miss. 1976), the four theories underlying the cause of action are as follows:
1. The intentional intrusion upon the solitude or seclusion of another;
2. The appropriation of another's identity for an unpermitted use;
3. The public disclosure of private facts; and
4. Holding another to the public eye in a false light.
This development is important because, as we shall see, the four sub-torts differ as to their elements and as to the damages available.
In the present case, the Candebats seem uncertain as to which of the sub-torts furnishes their theory of the case. In one point in their rebuttal brief, they assert that their case belongs to that sub-group dealing with "intentional intrusion upon the solitude and seclusion of another" rather than the "commercial appropriation" classification of the tort. (appellants' reply br. 4) If so, then the appellants have committed themselves to sustaining a much heavier burden. For this type of invasion of privacy, there is "no liability unless the interference with plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object." Restatement 2d of Torts, § 652(b), Comment D (1977). See also, e.g., Wilson v. Retail Credit Co., 325 F. Supp. 460, 467 (S.D.Miss. 1971) (must show bad faith or utterly reckless prying).
*210 However, the pleadings clearly allege that the defendants "either caused to be or did appropriate the names of Mr. James Candebat, Sr. and Mrs. Irene Candebat for the commercial advantage of the corporate defendant ... to further the mercantile goals of aggrandize and enrich [said] defendant ... without the knowledge or express consent of the Candebats." Thus, the gravamen of this action is clearly the appropriation of the identity of the plaintiffs without their consent.
There is no dispute as to the existence of the cause in Mississippi. Nor is it disputed that in Mississippi damages for mental suffering can be recovered even though there was no physical impact. The appellee admits as much in his brief. The decisive question, then, is whether or not the damages sought in the complaint are of the type available under the sub-tort of appropriation. The trial judge ruled that they were not.
There are two principal schools of thought as to the damages available under the appropriation sub-tort. Courts side with one or the other according to their understanding of the nature of the interest protected by the action. Dean Prosser's comments on this issue are uncharacteristically opaque:
Although the element of protection of the plaintiff's personal feelings is not to be ignored in such a case, the effect of the appropriation decisions is to recognize or create an exclusive right in the plaintiff to a species of trade name, his own, and a kind of trademark in his likeness. It seems quite pointless to dispute over whether such a right is to be classified as "property"; it is at least clearly proprietary in its nature.
(Prosser & Keeton, § 117 at 854).
Despite the many qualifications used by Prosser in this discussion, some courts have seized upon the property oriented language and argued that the damages available must be comparable to those available in other suits for misuse of plaintiff's property. That is, the plaintiff can recover only the value of what is lost.
One of the cases cited by appellee affords a striking example of this approach. In Cabaniss v. Hipsley, 114 Ga. App. 367, 151 S.E.2d 496 (1966), a female stripper was photographed while performing at a nightclub. Defendant somehow acquired this photograph and began using it to advertise his own nightclub, in which the plaintiff had not performed. Plaintiff sued for appropriation of her likeness. After quoting language from Prosser emphasizing the proprietary character of the interest, the Georgia court remarked "the main distinction between this aspect of privacy and the other three is the distinction between causes of action involving injury to feelings, sensibilities of reputation and those involving an appropriation of rights in the nature of property rights for commercial exploitation." Cabaniss, supra, at 377, 151 S.E.2d at 504. "It must necessarily follow", the court went on, "that there is a fundamental distinction between the two classes of cases and the measure of damages to be applied. In former cases, (which we take to be the intrusion, disclosure and false light aspects of the privacy torts), general damages are recoverable without proof of special damages ... in the latter class the measure of damages is the value of the use of the appropriated publicity." Id. 114 Ga. App. at 378, 151 S.E.2d at 504. Accordingly, the court held that the plaintiff could not recover damages for mental suffering in the absence of some specific showing of loss.
In Hamilton v. Crown Life Ins. Co., 246 Or. 1, 423 P.2d 771 (1967), the Oregon Supreme Court faced a situation very like the one in the present case involving the abuse of personal data by an insurance company. There the Court, relying on analysis of the interest protected as a property right, denied recovery to the plaintiff because there was no showing that the appropriation was "commercially valuable" to the defendant. 423 P.2d at 772.
Both sides claim Canessa v. J.I. Kislak, Inc. 97 N.J. Super. 327, 235 A.2d 62 (1967), as their own. Neither side remarks a peculiar fact about this case. In Canessa the *211 plaintiffs elected to frame their complaint in terms of proprietary interest in their name and likeness, because New Jersey has a longer statute of limitations for property related torts than for personal injury torts. In criticizing the Candebats' use of Canessa, the appellees argue that "the court there holds that one not a public figure has no pecuniary market value in his name or likeness until the alleged unlawful act of the defendants appropriation establishes it. In such a case, the Canessa court held that damages are measured by the value of the appropriation to the defendant and by determining the portion of the defendant's profits to which the plaintiff is entitled commensurate with its importance to the defendant's commercial enterprise." (Appellee's brief, pp. 12-13).
In the first place, this does not really constitute the Canessa court's holding. It is part of a long quotation from a law review article which is cited in the body of the opinion. 97 N.J. Super. at 350, 235 A.2d at 75. In any event, the language does not prove that the New Jersey court would accept that as the proper measure of damages, if the action were pleaded on a theory of mental suffering, rather than injury to proprietary interest. In fact, since Canessa was the appeal of a summary judgment, the proper measure of damages was not technically before the court, and the court expressly said it was not deciding it. Furthermore, it went on to cite with approval Prosser's declaration that "in an action for `appropriation' the element of protection of the plaintiff's feelings is not to be ignored." Canessa, 97 N.J. Super. at 352, 235 A.2d at 76, N. 5. While Canessa is inconclusive, it appears to lean somewhat towards the side of the plaintiffs in the present case. Another case cited by the appellees is Bitsie v. Walston, 85 N.M. 655, 515 P.2d 659 (1973). In this case, a photographer took a picture of a Navajo Indian child with the consent of its parents. The picture was then placed on a set of cards to be used in a cerebral palsy drive. Plaintiffs sued for invasion of privacy. The New Mexico court, in denying recovery, mentioned Prosser's four part division of the tort into sub-torts, but preferred to rely for its analysis on the First Restatement which treated it as a single undivided tort. The pertinent language is "a person who unreasonably and seriously interferes with another's interest in not having his affairs known to others, ... is liable to the other." Restatement of Torts, § 867 (1939). Comment (d) to that section states: "Liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities... ." The court in Bitsie held that the conduct complained of did not satisfy this standard.
The Bitsie case, along with recent developments in the law of torts in this area, was discussed in a recent federal decision from New Mexico. Benally v. Hundred Arrows Press, 614 F. Supp. 969 (D.N.M. 1985). Benally involved a fact pattern very similar to that of Bitsie. It differed somewhat in that the complaint was framed according to the modern understanding of the tort, alleging violations of the sub-torts of unlawful public disclosure of private facts and appropriation of likeness. The federal court, in engaging in an "Erie-guess" of the type necessary for federal courts in diversity cases, held that if faced with these issues today, the New Mexico court would probably recognize four separate causes of action under the tort of invasion of privacy. Benally at 978. The court, relying on modern precedents, said the requirement that the publicity be of a kind that would be "highly offensive to a reasonable person" applied only in the sub-tort of unlawful public disclosure of a private fact, not in a case for appropriation of name or likeness. However, the plaintiffs in Benally lost anyway, because the court accepted the defendant's claim that the photograph was used for "illustrative and not commercial purposes." 614 F. Supp. at 980. As a result of Bitsie and Benally, the law of New Mexico is uncertain as to what damages are available under the separate sub-torts under the invasion of privacy.
*212 Another line of decisions, relied upon by the Candebats has refused to interpret the "property" element of the injury as requiring the wholesale importation of property related limitations on damages into privacy actions. The ancestor of this line of cases is Hinish v. Meier & Frank Co., 166 Or. 482, 506, 113 P.2d 438, 448 (1941), which held that recovery in a privacy action is not barred simply because the injury cannot be measured by pecuniary standard. The leading case on damages for mental suffering in a privacy action is Fairfield v. American Photocopy Equipment Co., 138 Cal. App.2d 82, 291 P.2d 194 (1955). There the court stated:
The gist of the cause of action in a privacy case is not injury to the character or reputation but a direct wrong of a personal character resulting in an injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest or the standing of the individual in the community... . The injury is mental and subjective.
(138 Cal. App.2d at 86, 291 P.2d at 197).
Other courts have taken the same approach, but have emphasized the "wilful" nature of the defendant's violation. E.g., Olan Mills of Texas, Inc. v. Dodd, 234 Ark. 495, 499, 353 S.W.2d 22, 24 (1962); Billings v. Atkinson, 489 S.W.2d 858, 860 (Tex. 1973).
The Fairfield/Olan Mills line of decisions received valuable support in 1977 with the publication of the Second Restatement. The new Restatement adopted Prosser's four-fold division of the tort of invasion of privacy. On the question of damages, it said: "One who has established a cause of action for invasion of his privacy is entitled to recover damages for ... his mental distress proved to have been suffered if it is a kind that normally results from such an invasion." Restatement (Second) of Torts, § 652(H). Of course, if the plaintiff does suffer a quantifiable pecuniary loss as a result of the appropriation, he may recover the value of that as well. Id. § 652(H) comment A. It is worthy to note that the second Restatement contained much of the language referring to the tort as basically one against the property interest, but took the position that this need not preclude the recovery of damages for mental suffering as well.
Appellees cite Aldridge v. Johnson, 318 So.2d 870 (Miss. 1975); Sears, Roebuck & Co. v. Young, 384 So.2d 69 (Miss. 1980); and Sears, Roebuck & Co. v. Devers, 405 So.2d 898 (Miss. 1981) for the proposition that where damages are awarded for mental suffering there must be "sufficient proof" of the injury. In the first place none of these were appropriation cases; in the second place, whether the amount of suffering was satisfactorily proven or sufficient is a matter for the finder of fact. In the present case, that decision was taken from the jury by directed verdict.
On the whole, the approach of the second Restatement and the Fairfield court seem far preferable to that urged by the appellees, because the mere fact that the use of one's name or likeness shares certain characteristics of property does not prove that the law governing injuries to it must be governed solely by property related considerations. The injury to the plaintiff's feelings may very well be the more serious of the two in many instances; often an intrusion which is of very little commercial consequence can nonetheless cause serious emotional distress. The law should protect both the proprietary and emotional interests; it should not focus with tunnel vision on the property-related characteristics of the tort.
On the issue of punitive damages, they are recoverable where the defendant has done the plaintiff such a wrong as to import insult, fraud, oppression or reckless disregard for his rights. T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485, (Miss. 1972); or upon a showing of wilful and intentional wrong, or for such gross negligence and reckless conduct as is equivalent to such a wrong. Seals v. St. Regis Paper Co., 236 So.2d 388, 392 (Miss. 1970). See also, Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460 (Miss. *213 1983). We are not prepared to state on this appeal this was not a case for punitive damages, and therefore, this issue will not be foreclosed on remand.
We hereby remand the case for a full trial on the merits. Accordingly, it is not necessary to discuss the second assignment of error.
REVERSED AND REMANDED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
WALKER, P.J., not participating.