860 F.2d 877
 57 USLW 2319, 15 Media L. Rep. 2205
 Peggy AULT, Plaintiff-Appellant,
v.
HUSTLER MAGAZINE, INC.; Flynt Distributing Co., Inc.;
Flynt Subscription Company, Inc.; City of Roses
Newspaper Co.; Willamette Weekly;
Cathy Cheney, Defendants-Appellees.
 No. 87-3684.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1988.
Decided Oct. 25, 1988.
 
 Gary L. Shockey, Spence, Moriarity & Schuster, Jackson, Wyo., for plaintiff-appellant.
 David O. Carson, Beverly Hills, Cal., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before TANG, FLETCHER and PREGERSON, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 In this diversity action, Ault appeals the district court's dismissal of her invasion of privacy, libel, intentional infliction of emotional distress, and trespass and conversion claims against Hustler Magazine, Inc. arising from the magazine's depiction of her in its regular "Asshole of the Month" feature. Ault also appeals the court's dismissal of Larry Flynt and L.F.P., Inc. for lack of personal jurisdiction, and the award of sanctions against Ault and her attorney. We affirm in part and reverse in part.
 
 BACKGROUND
 
 2
 Peggy Ault founded the Citizens in Action for Clackamas County, Oregon, headquartered in Milwaukie, Oregon, to organize opposition to an adult video-store. As a member of this organization, Ault has participated in picketing adult stores. She is apparently also involved in Citizens for Legislation Against Decadence through which she lobbies the legislature to enact anti-pornography measures. In recognition of her activities Ault was interviewed by the newspaper, Willamette Week, and her photograph accompanied the resulting article.
 
 
 3
 In its April 1985 issue, Hustler Magazine published an article featuring Peggy Ault as "Asshole of the Month." The article is accompanied by a small photograph of Ault superimposed over the rear-end of a bent-over naked man. The article discusses Ault's anti-pornography activities and characterizes her organization as a "wacko group" engaging in censorship and intimidation tactics with plans to undermine first amendment freedoms. The article portrays Ault as a "tightassed housewife," "frustrated," "threatened by sex," a "fanatic," a "crackpot" and a "deluded busybody" in need of "professional help."
 
 
 4
 Ault initially sued in state court and the Hustler defendants removed to federal court. The original complaint included claims for intentional infliction of emotional distress, invasion of privacy, libel, outrage, trespass, conversion, interference with first amendment rights, obscenity and joint and several liability. After Ault filed a second amended complaint correcting a clerical error (i.e., the inadvertent inclusion of claims from another complaint), the district court dismissed the claims for libel and intentional infliction of emotional distress as barred by the statute of limitations, and the claims for trespass and conversion for failure to state a claim. It dismissed defendants Larry Flynt and L.F.P., Inc. for lack of personal jurisdiction. In her third amended complaint Ault re-alleged all four forms of invasion of privacy and the district court dismissed the complaint. The court also imposed sanctions on Ault and her attorney for filing frivolous claims and awarded attorney fees to Hustler for time spent responding to the erroneous first amended complaint.
 
 
 5
 The court entered a final judgment dismissing the action on March 9, 1987. Ault timely appeals challenging all rulings of the district court.
 
 DISCUSSION
 
 6
 I. Libel, False Light, and Intentional Infliction of Emotional Distress
 
 
 7
 As a threshold matter we must determine whether the Hustler article constitutes the expression of an opinion rather than of factual statements. The distinction is crucial because if a challenged statement is one of opinion rather than fact, then under the first amendment it cannot give rise to a defamation claim. Greenbelt Cooperative Publishing Ass'n Inc. v. Bresler, 398 U.S. 6, 14, 90 S.Ct. 1537, 1542, 26 L.Ed.2d 6 (1970). Opinions are constitutionally privileged because, in the Supreme Court's oft-reiterated view, under the first amendment there is no such thing as a false idea. Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974). We have explained that "[b]ecause a statement must be false to be actionable defamation, Restatement (Second) of Torts Sec. 558(a) (1977), an opinion is simply not actionable defamation." Lewis v. Time Inc., 710 F.2d 549, 553 (9th Cir.1983). It is likewise clear that a constitutionally privileged statement of opinion cannot form the basis of a claim for invasion of privacy by placing a person in a false light. Time, Inc. v. Hill, 385 U.S. 374, 387-88, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967). Nor can privileged opinion support a claim for intentional infliction of emotional distress. Hustler Magazine, Inc. v. Falwell, --- U.S. ----, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). Falwell holds "that public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,' i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true." Id. 108 S.Ct. at 882.
 
 
 8
 Falwell clearly holds that the opinion privilege applies by barring an emotional distress action brought by a public figure. We have said that the privilege also applies by barring a defamation action brought by a private person. Lewis, 710 F.2d at 553.[1] Thus we conclude that the opinion privilege bars recovery for intentional infliction of emotional distress whether Ault is a public figure or a private person for first amendment purposes and we do not decide her status.
 
 
 9
 It is our usual practice to apply the constitutional defense of privileged opinion without first analyzing whether the statements in question are actionable under state law. See Koch v. Goldway, 817 F.2d 507, 508 (9th Cir.1987) (indicating that California courts conflate common law principles and constitutional doctrine on the definition of opinion). It is well settled in this Circuit that the fact or opinion distinction in diversity cases is to be decided as a question of federal law. Id. at 509 (citing Lewis, 710 F.2d at 555). Accord Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1016 (1st Cir.1988), petition for cert. filed, May 26, 1988; Ollman v. Evans, 750 F.2d 970, 978 (D.C.Cir.1984) (en banc) (whether a printed statement is protected opinion or an unprotected factual assertion is a matter of law for the court), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
 
 
 10
 In general "[s]tatements not themselves factual, and which do not suggest that a conclusion is being drawn from facts not disclosed in the statement, are commonly statements of opinion, not fact." Koch, 817 F.2d at 509. The three-prong test of whether the substance of a publication is fact or opinion is: (1) whether the words can be understood in a defamatory sense in light of the facts surrounding the publication, including the medium by which and the audience to which the statement is disseminated; (2) whether the context in which the statements were made, e.g., public debate or a labor dispute, would lead the audience to anticipate persuasive speech such as "epithets, fiery rhetoric or hyperbole"; and (3) whether the language used is the kind generated in a "spirited legal dispute." Lewis, 710 F.2d at 553 (citing Information Control Corp. v. Genesis One Computer Corp., 611 F.2d 781, 783-84 (9th Cir.1980)).
 
 
 11
 Ault argues that under this test: (1) it is clear that any reasonable person would infer a defamatory meaning in these words; (2) the article is not part of a public debate in which a participant can be excused for intemperate language; and (3) nothing in the language of the article gives any indication that this is an editorial or opinion piece.
 
 
 12
 We agree with the district court's application of the test finding that the article states an opinion. First, although we agree with Ault that the words initially convey a defamatory meaning, when the facts of publication are considered the words assume the character of protected opinion. Publication in Hustler, a magazine known for its pornographic content and directed to an audience sympathetic to pornography, creates a context which robs the statements of defamatory meaning because the statements will be taken as statements of Hustler's opinion of Ault, not as facts about her personal reasons for opposing pornography. We are particularly persuaded to this view because the article appeared in a regular monthly feature routinely devoted to lampooning opponents of pornography and critics of Hustler Magazine. See Fudge, 840 F.2d at 1017 (certain genres of magazine features are so familiar to the audience that a reader reasonably knows they express opinions not facts). Second, we must reject Ault's effort to limit the meaning of "public debate" to an oral, contemporaneous exchange of ideas. We think it is clear that there is a heated and spirited debate on pornography of which this article is a part, and in which epithets, fiery rhetoric and hyperbole are expected. Third, although it is true that the Hustler feature did not include a disclaimer overtly identifying it as opinion, this misses the point of the third prong of the test of opinion. The offending phrases in this article are, unfortunately, representative of the type of language generated in a dispute over such a subject. See Koch, 817 F.2d at 510. (It is unfortunate that the legal category of opinion must be used to describe a statement that is no more than "a vicious slur" but "[b]ase and malignant speech is not necessarily actionable.").
 
 
 13
 Our holding that the Hustler article about Ault is constitutionally protected opinion forecloses her claims for libel, for invasion of privacy by placing her in a false light and for intentional infliction of emotional distress. We affirm the district court's dismissal of these claims on grounds other than those employed by the district court. See Golden Nugget, Inc. v. American Stock Exchange, Inc., 828 F.2d 586,590 (9th Cir.1987) (we may affirm the judgment of the district court on any basis finding support in the record). For this reason we do not reach the court's rulings that the libel action is barred by the statute of limitations or that the intentional infliction of emotional distress claim must be dismissed because it is based on the same facts as the libel claim.
 
 II. Other Tort Claims
 A. Public disclosure of private facts
 
 14
 A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a legal ruling reviewed de novo. Church of Scientology v. Flynn, 744 F.2d 694, 695 (9th Cir.1984). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All allegations in the complaint must be treated as true. Flynn, 744 F.2d at 696.
 
 
 15
 Ault's claim of public disclosure of private facts is the only claim that survived the district court's October 20, 1986 dismissal. The district court ultimately dismissed this claim because Ault did not successfully allege the publication of any true private facts. We agree with the district court's finding. The factual statements about Ault's involvement in antipornography organizations are not statements of private facts, nor are the facts that Ault reads the newspaper and removes ads for lingerie before letting her children read the paper. In a claim for invasion of privacy by publication of facts, the facts disclosed must be private, not public. Tollefson v. Price, 247 Or. 398, 401, 430 P.2d 990, 992 (1967); Trout v. Umatilla Co. School Dist., 77 Or.App. 95, 712 P.2d 814, 817 (1985), review denied, 300 Or. 704, 716 P.2d 758 (1986).
 
 
 16
 Ault argues that a true picture of her was published and that a true statement (that she reads the newspaper and cuts out certain ads) was linked with a false and derogatory inference that she was sexually aroused "as she crumpled up those offending undies ads" to create the impression that a private fact was being revealed. Further, Ault argues that the truth of the statements need not be pleaded under Oregon law, citing Hinish v. Meier & Frank Co., 166 Or. 482, 113 P.2d 438 (1941), Hamilton v. Crown Life Ins. Co., 246 Or. 1, 423 P.2d 771 (1967), Tollefson v. Price, 247 Or. 398, 430 P.2d 990 (1967), and Anderson v. Fisher Broadcasting Co., 300 Or. 452, 712 P.2d 803 (1986). But, as Anderson clearly states, the earlier cases did not involve the truthful publicizing of private facts. 712 P.2d at 806. Anderson holds that in Oregon there is no common-law tort liability for truthful presentation of private facts unless the defendant's conduct in obtaining or publishing the information is wrongful in some other respect. Id. at 814.
 
 
 17
 Ault construes a portion of Anderson to hold that there is a cognizable claim for public disclosure of private facts and that such disclosure of "private affairs might not be truthful." Id. This is a misreading of Anderson. The Oregon Supreme Court held there is no recovery for truthful publication and then went on to enumerate the other types of wrongdoing that could lead to recovery for the emotional injury resulting from a publication. Id. As a final note it indicated that there could be recovery for publication of false information, as in Hinish or Tollefson, but these claims would not be denominated "public disclosure of private facts."
 
 B. Intrusion
 
 18
 The district court properly dismissed the claim of intrusion because Ault did not allege any facts to support it. Ault relies on Restatement (Second) Torts Sec. 652B (1977), which says
 
 
 19
 One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
 
 
 20
 See Trout, 77 Or.App. at 99, 712 P.2d at 817 (Oregon court cites this section as the law in Oregon).
 
 
 21
 Ault contends that the Hustler defendants intruded on her "by fraudulently misrepresenting who they were to get a nonpublic picture of her," and also by prying into her life and personal affairs. The depiction in the picture and words was intended to make "its readers look at Peggy Ault in the same light that they look at the naked models in the magazine--as objects, unworthy of intellectual respect and worthy only of sexual contempt." While this may be a reasonable interpretation of the purpose of the article, the facts do not fit the elements of the tort of intrusion. The means Hustler used to obtain the photograph is not actionable as an intrusion into Ault's privacy because when a person agrees to be photographed for a newspaper, the photograph is not a private concern and its republication does not create ground for liability. Brewer v. Hustler Magazine, Inc., 749 F.2d 527, 530 (9th Cir.1984); Gill v. Hearst Publishing Co., 40 Cal.2d 224, 253 P.2d 441, 444-45 (1953).[2]
 
 C. Misappropriation
 
 22
 The district court properly dismissed the claim of misappropriation because Hustler did not use the photograph for its own commercial gain, but to accompany a newsworthy article about Ault. The tort of wrongful appropriation requires that the defendant appropriate the plaintiff's likeness to his own use or benefit. Restatement (Second) Torts Sec. 652C. It has generally been held that this tort is "not applicable when a person's picture is used to illustrate a non-commercial, newsworthy article." Martinez v. Democrat-Herald Pub. Co., 64 Or.App. 690, 693, 669 P.2d 818, 820, review denied, 296 Or. 120, 672 P.2d 1193 (1983); also see Anderson, 300 Or. 452, 712 P.2d at 813 ("Publication of ... [a] photograph is not appropriation for commercial use simply because the medium itself is operated for profit.") Anderson holds that using a picture without consent is actionable only when it injures the economic interests of the plaintiff due to commercial exploitation, or when the "picture was either obtained or broadcast in a manner or for a purpose wrongful beyond the unconsented publication itself." 712 P.2d at 813.
 
 
 23
 Ault argues that there is a commercial purpose here because Hustler wants to destroy the anti-pornography movement to enhance its profits, and lampooning Ault is one means to that end. While Hustler's objectives may well have commercial undertones, the article, as an expression of constitutionally protected opinion on a matter of public interest, is "newsworthy."
 
 D. Trespass and Conversion
 
 24
 The district court properly found that Ault failed to state a claim for trespass upon her personal right to her photograph or for conversion of her personal property right in her photographic image. Trespass is an invasion of a possessor's interest in land. Frady v. Portland General Elec. Co., 55 Or.App. 344, 637 P.2d 1345, 1349 (1981). Conversion requires the intentional exercise of dominion and control over a chattel. B & L Furniture Co. v. Transamerica Ins. Co., 257 Or. 548, 480 P.2d 711, 712 (1971). While the photograph might be viewed as a chattel, it was the property of the photographer, not of Ault, so there was no conversion of Ault's chattels.[3]
 
 III. Sanctions
 
 25
 Awards of sanctions and attorney fees are reviewed for an abuse of discretion. Zaldivar v. City of Los Angeles, 780 F.2d 823, 828 (9th Cir.1986); Beaudry Motor Co. v. ABKO Properties, Inc., 780 F.2d 751, 756 (9th Cir.1986), cert. denied, 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986). However, the legal conclusion that facts constitute a violation of Rule 11 is reviewed de novo. Zaldivar, 780 F.2d at 828.
 
 
 26
 The district court awarded Rule 11 sanctions based on Ault's allegedly frivolous claims of (1) interference with constitutional rights; (2) a civil claim based upon violation of obscenity statutes; and (3) joint and several liability against a local distributor. Ault argues that all of these liability theories were legally reasonable.
 
 
 27
 Under the standards of Zaldivar, 780 F.2d at 828, Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1542 (9th Cir.1986), and Hurd v. Ralphs Grocery Co., 824 F.2d 806 (9th Cir.1987) we do not agree that sanctions are appropriate for the filing of these claims. Although counsel failed to defend these claims in the memorandum filed in response to Hustler's motion to dismiss, the inquiry into the propriety of Rule 11 sanctions for filing frivolous claims is whether a reasonably competent attorney would believe at the time of the filing that the plaintiff had a legal right under "existing law" or a "good faith argument for the extension, modification, or reversal of existing law." Zaldivar, 780 F.2d at 830. The failure to cite authority for certain claims is not dispositive of whether the claims had a legal foundation. In a case of this sort, where the plaintiff has clearly suffered a grievous assault to her human dignity we do not wish to endorse sanctions which can only serve to chill zealous advocacy. See Hurd, 824 F.2d at 810-11. That the law does not offer protection from such disgusting and distasteful abuse is not to say that arguments for its extension are wholly unreasonable. Id. at 811.
 
 
 28
 The court also imposed Rule 11 sanctions because Ault's counsel filed an erroneous First Amended Complaint without reading it. Although we do not condone carelessness, the error was clearly clerical in nature, resulting from a wrong signal to a word-processer that caused extraneous material to be included in the First Amended Complaint. We do not think it the type of error for which Rule 11 sanctions were intended. The Hustler attorneys could have avoided expending time answering the complaint and preparing a motion to dismiss if they had simply notified Ault's counsel of the obvious error.
 
 CONCLUSION
 
 29
 The dismissal of the claims is AFFIRMED and the imposition of sanctions and attorney fees is REVERSED.
 
 
 
 [1]
 There is no independent cause of action for intentional infliction of emotional distress based on the very same acts which are insufficient to support an action for defamation. Flynn v. Higham, 149 Cal.App.3d 677, 681, 197 Cal.Rptr. 145, 147 (1983)
 
 
 [2]
 It makes no difference to this analysis that the photo Hustler used was not the same one used by the Willamette Week, since both photos were in the photographer's possession and were very similar
 
 
 [3]
 Because we find the district court properly dismissed all of Ault's claims, we need not consider the issue of the court's personal jurisdiction over Larry Flynt