IN THE SUPREME COURT OF MISSISSIPPI
NO. 1999-CA-01870-SCT

***KELLI L. WILLIAMSON, A MINOR, BY AND THROUGH HER LEGAL AND NATURAL GUARDIAN, MOTHER AND NEXT FRIEND, CYNTHIA D. WILLIAMSON AND CYNTHIA D. WILLIAMSON, INDIVIDUALLY***

***v.***

***JAMES A. KEITH***

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/1999 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PAUL E. ROGERS |
| ATTORNEY FOR APPELLEE: | ROBERT LEWIS GIBBS |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/07/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/28/2001 |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. Kelli L. Williamson, a minor, by and through her legal and natural guardian, mother and next friend, Cynthia D. Williamson (the "Williamsons"), filed a complaint in the Circuit Court of Madison County against James A. Keith ("Keith") and Beth Richmond ("Richmond"). The complaint alleged that there was an abuse of process, violation of due process and invasion of privacy when Keith and Richmond subpoenaed Kelli's medical records from the Shea Clinic in Memphis, Tennessee.

¶2. Richmond filed a motion to dismiss. Later the Williamsons voluntarily dismissed Richmond and continued proceedings only against Keith. Keith subsequently filed a motion for summary judgment asserting that the Williamsons had failed to provide evidence of the existence of elements necessary to their claims of abuse of process and invasion of privacy. Keith's motion also contended that the due process clause of the federal and state constitutions cannot be invoked against Keith because he is a private citizen. The trial court granted summary judgment in favor of Keith, dismissing the complaint.

¶3. The Williamsons timely perfected this appeal.

## FACTS

¶4. Kelli is a special education student enrolled in the Madison County School District (the "School

District"). In April, 1994, Kelli received a cochlear implant (a surgically implanted assistive hearing device) before she enrolled in the Madison County School District months later. In 1998, Kelli lost the magnet, coil, and cord components of her cochlear implant somewhere between school and home. The Williamsons demanded reimbursement from the School District for the lost components on the ground that the implant was an assistive technology device, in conformity with the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-87, which enabled Kelli to receive the full benefit of her education. The School District denied that the implant was an assistive technology device, but rather a personal device, and refused to provide compensation for the missing components.

¶5. As a result of the School District's decision not to pay for the lost components, the Mississippi Protection and Advocacy System, Inc. ("P&A") requested a due process hearing on behalf of Kelli to challenge the School District's refusal to compensate. Keith was hired as attorney for the School District, and Beth Richmond was appointed as hearing officer for the due process hearing.

¶6. After the request for the due process hearing, attorney Becky Floyd of P&A indicated to Keith that she planned to call a representative of the Shea Clinic, the facility where Kelli's implant procedure was performed, as a witness. During this conversation with Floyd, Keith mentioned that he wished to subpoena Kelli's Shea Clinic medical records in preparation for the hearing. Thereafter, the Williamsons provided a witness list for the hearing that showed that Elizabeth Domico, an audiologist with the Shea Clinic, was to be called to testify.

¶7. Keith requested issuance of a subpoena for Kelli's medical records. Richmond, acting as hearing officer, issued the subpoena. Keith then served the subpoena on the custodian of records at the Shea Clinic. No copies of Keith's request for the subpoena or the subpoena were served on P&A. Shea Clinic subsequently provided Kelli's medical records to Keith. These documents covered the period of March 10, 1993, to September 8, 1994, and contained information regarding Kelli's hearing loss, cochlear implant, and general medical history.

¶8. The Madison County due process hearing never took place because the School District and the Williamsons entered into a Settlement Agreement resolving the dispute. In an affidavit sworn by Cynthia Williamson, Kelli's mother, Cynthia stated that the Williamsons did not become aware of Keith's request for Kelli's records until several months after the matter was settled. Subsequently, the Williamsons filed suit against Keith and Richmond alleging that there was an abuse of process, violation of due process and invasion of privacy when Keith and Richmond subpoenaed Kelli's medical records from the Shea Clinic in Memphis, Tennessee. Richmond was eventually dismissed from the suit.

¶9. Keith, in his sworn affidavit, explained that he never used the Shea Clinic records and did not disclose or publish them, or any information contained therein to anyone other than his legal assistant and the School District's Special Education Services Director in preparation for the due process hearing. Keith also stated in his affidavit that he did not become aware that he had not served a copy of the subpoena request or the subpoena to P&A until he reviewed his file after the Williamsons had filed suit.

## STANDARD OF REVIEW

¶10. This Court has a well-established standard of review of a trial court's grant of summary judgment:

Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as

that of the trial court under [Rule 56(c) of the Mississippi Rules of Civil Procedure](). This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of the doubt.

*Heigle v. Heigle*, 771 So.2d 341, 345 (Miss. 2000) (quoting *McCullough v. Cook*, 679 So.2d 627, 630 (Miss.1996)).

## DISCUSSION

### I. WAS SUMMARY JUDGMENT DISMISSING THE ABUSE OF PROCESS CLAIM PROPER?

¶11. The Williamsons claim that Keith's requesting of a subpoena to obtain Kelli's medical records without sending their attorneys at P&A a copy of the request resulted in an abuse of process. The Williamsons assert that there existed genuine issues of material fact which should have precluded the trial court from granting summary judgment in favor of Keith.

¶12. This Court, in *State ex. rel. Foster v. Turner*, 319 So.2d 233 (Miss. 1975), defined the action of abuse of process:

> The action of abuse of process consists in the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained. . . .

*Id.* at 236 (footnote omitted). This Court has outlined the elements that must be proven in order to sustain an action of abuse of process:

> (1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process;
>
> (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and
>
> (3) that damage resulted to the plaintiff from the irregularity.

*Id.*

¶13. This Court has stated that summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." ***Galloway v. Travelers Ins. Co.***, 515 So.2d 678, 683 (Miss. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265, 273 (1986)). In order to succeed in challenging the trial court's granting of summary judgment, the Williamsons must show the existence of each element of abuse of process, otherwise summary judgment will stand.

¶14. Taking each of the three elements required to make a showing of abuse of process and examining all the evidentiary matters in the light most favorable to the Williamsons, it is this Court's determination that summary judgment was properly granted regarding the alleged abuse of process by Keith.

¶15. The first element that must be shown in an abuse of process claim is "that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process." ***Turner***, 319 So.2d at 236. Keith acknowledges in his affidavit that he mistakenly failed to "serve a copy of the subpoena on Kelli's legal representatives" when he requested Kelli's medical records from the Shea Clinic. Because there is no dispute regarding whether the Williamsons make a successful showing of this first element, further analysis of it is unnecessary.

¶16. The second element that must be shown in an abuse of process claim is "that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process." ***Id.*** at 236. The Williamsons assert that there is a genuine issue of material fact as to whether Keith had ulterior motive when he requested Kelli's medical records. The Williamsons point to statements contained in three affidavits to support this notion.

¶17. The first affidavit was made by Rebecca Floyd, the attorney who represented the Williamsons regarding the due process hearing that was to occur. In it she states that "[a]t no time did I receive any notification that a request for a subpoena had been sent to the hearing officer or served on the Shea Clinic." The second affidavit was made by Cynthia Williamson, Kelli's mother. In it Cynthia states, "I do not believe that Mr. Keith's failure to notify my attorney concerning this subpoena was inadvertent but believe that he intentionally did not notify her because he knew I would have objected to him receiving Kelli's privileged and confidential medical records which were in no way relevant to the due process hearing." Finally, the Williamsons refer to the affidavit of Amanda Rogers who stated that she and her husband, the Williamsons attorney, sued Keith in the Chancery Court of Hinds County for requesting that the hearing officer issue subpoenas for privileged and confidential medical records relating to her son without notice to her, her husband or her attorney. Attached to Rogers's affidavit was a copy of the complaint naming Keith as one of the defendants. The Williamsons assert that Keith's conduct in dealing with the medical records of Rogers's son, which is similar to what allegedly occurred in the present case, raises doubt as to Keith's motive.

¶18. The affidavits presented by the Williamsons fail to show that Keith acted with ulterior motive when he neglected to provide the Williamsons and their attorney with a copy of the subpoena and request for subpoena for Kelli's medical records.

¶19. This Court has stated:

The party moving for summary judgment has the burden to establish that there is no genuine issue of disputed material fact. The benefit of doubt as to whether there is a genuine issue of fact is given to the non-moving party. ***Brown v. Credit Center, Inc.***, 444 So.2d 358, 362 (Miss.1983). However, the party opposing the motion is required to provide "significant probative evidence demonstrating the

existence of the triable issue of fact." *Id.* at 364 (citing *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir.1982)). "Mere allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Brown*, 444 So.2d at 364 (quoting *Liberty Leasing Co. v. Hillsum Sales Corporation*, 380 F.2d 1013, 1015 (5th Cir.1967)).

*Ellis v. Powe*, 645 So.2d 947, 952 (Miss. 1994). The statements offered by Cynthia Williamson and Amanda Rogers amount to nothing more than statements of belief that Keith intentionally failed to provide the copies to the appropriate parties, but do not provide any "significant probative evidence" to show the existence of a triable issue of fact. The statement given by Rebecca Floyd simply offers what Keith has already admitted, but does not give any support as to the existence of ulterior motive. Ulterior motive by Keith should not be found simply because he did not follow proper procedure. The existence of improper procedure does not, by itself, give rise to an abuse of process claim. *Simon v. Perret*, 619 So.2d 155, 157 (La. Ct. App. 1993). The Williamsons fail to provide any evidence that Keith had an ulterior motive.

¶20. The final element that must be shown in an abuse of process claim is "that damage resulted to the plaintiff from the irregularity." *Turner*, 319 So.2d at 236. The Williamsons fail to present any evidence of damage in this case. Damages were not addressed in the Williamsons' initial brief to this Court. The only discussion of damages by the Williamson occurs in the reply brief where they assert that damages are to be implied by the affidavits submitted and Keith's act of making an unlawful request for the subpoena to get Kelli's medical records.

¶21. Summary judgment was proper for the Williamsons' abuse of process claim because the Williamsons failed to make a showing sufficient to establish the existence of two elements essential to the case on which they bear the burden of proof at trial. *Galloway*, 515 So.2d at 683.

¶22. This issue is without merit.

## II. WAS SUMMARY JUDGMENT DISMISSING THE INVASION OF PRIVACY CLAIM PROPER?

¶23. The Williamsons assert that the trial court erred in granting summary judgment on the claim of invasion of privacy because there existed genuine issues of material fact which would preclude summary judgment. The Williamsons contend that there was an invasion of privacy by Keith publicly disclosing Kelli's private medical records.

¶24. This Court has described invasion of privacy as composed of four distinct and separate sub-torts:

> 1. The intentional intrusion upon the solitude or seclusion of another;
>
> 2. The appropriation of another's identity for an unpermitted use;
>
> 3. The public disclosure of private facts; and
>
> 4. Holding another to the public eye in a false light.

*Candebat v. Flanigan,* 487 So.2d 207, 209 (Miss. 1986). *See also* **[Plaxico v. Michael](#)**, 735 So.2d 1036, 1039 (Miss. 1999) (plurality opinion).

¶25. Regarding the sub-tort of public disclosure of private facts, this Court has adopted the definition as

outlined in Restatements (Second) of Torts § 652D (1977) which states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Young v. Jackson*, 572 So.2d 378, 382 (Miss. 1990). Under this theory, the Williamsons must prove that Kelli's medical records were publicized by Keith. In accordance with Restatement (Second) of Torts § 652D, cmt. a (1977), this is a different standard than "publication" for defamation law purposes, which requires only communication with a third person. Comment a states that "Publicity", in an invasion of privacy sense,

> means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is one of a communication that reaches, or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

*Id.*

¶26. The extent of Keith's disclosure of Kelli's medical records was extremely limited. In his affidavit, Keith states that only his legal assistant and the School District's Special Education Director had access to the information, and that this was done in preparation for the scheduled due process hearing. The Williamsons do not submit any evidence of Kelli's records being published or that they were disclosed to the public by Keith. Under these circumstances, the Williamsons have not shown "publicity" for invasion of privacy purposes.

¶27. In addition, the information Keith received was no longer private because similar documents regarding Kelli's hearing loss, cochlear implant, and medical history, including documents from the Shea Clinic, had previously been published at a Jackson Public School due process hearing in 1995, which was conducted as an open hearing at the request of the Williamsons. This prior publication of Kelli's medical information is also fatal to the Williamsons' claim of invasion of privacy.

¶28. The trial court's granting of summary judgment on this issue was proper. This issue is without merit.

### III. IS KEITH ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY VIA BETH RICHMOND AND WAS HE RELEASED FROM LIABILITY BY THE SETTLEMENT AGREEMENT?

¶29. The Williamsons contend that Keith is not entitled to qualified immunity through hearing officer Beth

Richmond, as he asserted in his Memorandum in Support of Motion for Summary Judgment. The trial court stated in its Opinion and Order on Motion for Summary Judgment that "Keith was acting as an agent for the Madison County School District and therefore is entitled to immunity." The Williamsons also claim that Keith was not released from liability by the Settlement Agreement between the Williamsons and the school district, as was determined by the trial court.

¶30. Analysis of whether the trial court's determination regarding Keith's immunity and whether he was released from liability from the settlement agreement was correct is unnecessary as it has been determined that the trial court's granting of summary judgment regarding the Williamsons' claims of abuse of process and invasion of privacy against Keith was proper.

## CONCLUSION

¶31. Based on the foregoing analysis, we hold that the trial court's granting of summary judgment dismissing the abuse of process and invasion of privacy claims was proper. Therefore, the judgment of the Madison County Circuit Court is affirmed.

¶32. **AFFIRMED**.

**BANKS AND McRAE, P.JJ., SMITH, WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MILLS, J., NOT PARTICIPATING.**